## Browning v. Browning.

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

### Same v. Same.

(Decided October 19, 1920.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

Contracts—Reformation of Rental Contract—Evidence.—In an action to reform a rental contract, evidence examined and held that the contract expressed the intention of the parties to it, and plaintiff was not entitled to a reformation thereof.

HENRY J. TILFORD for appellant.

BURWELL K. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

These appeals will be considered together because they grow out of the same transaction and the facts are almost identical. Appellant and appellee are brothers. Some time before 1916 J. L. Browning owned a farm of fifteen acres with improvements in Jefferson county which he sold to Mrs. Alice H. Beckley, at the price of $2,000.00, $600.00 of which she paid to J. L. Browning and executed to him eight notes of fifty dollars each, and assumed a $1,000.00 mortgage to a Louisville banking concern. Finding that she could not meet the payments for the land Mrs. Beckley, in April, 1916, conveyed the same property to W. D. Browning at the same price and the said W. D. Browning executed to Mrs. Beckley notes for the portion of the price coming to her, and other notes to his brother, J. L. Browning, and assumed the $1,000.00 indebtedness to the Louisville Title Company. Mrs. Beckley made a deed for the property to W. D. Browning. Soon after W. D. Browning purchased the property he entered into a rental contract with his brother, J. L. Browning, whereby the said J. L. Browning was to have possession and use of the farm for one year with the privilege of four succeeding years. This contract is in writing and reads as follows:

"Anchorage, Kentucky, May 4, 1916.

"Agreement between W. D. Browning of the first party and J. L. Browning, party of the second part. Said W. D. Browning, party of the first part, agrees to rent or lease his farm near Avoca, formerly owned by J. L. Browning, said farm containing fifteen acres with all improvements for a term of twelve months with the privilege of four more years providing that said J. L. Browning makes his payments and everything is agreeable to both parties, said party of the first part reserves the right to sell said farm at any time he desires and in case said farm is sold J. L. Browning is to give peaceable possession in thirty days. Said J. L. Browning agrees to keep said place in repair, the party of the first part agrees to pay a reasonable amount for any crops that said party of the second part may have growing in case said farm is sold, it is further agreed that J. L. Browning is to have the privilege of buying said farm at the expiration of the five years at the same price that W. D.

Browning paid for same. It is further agreed that all money paid as rent is to go toward the purchase price on said farm providing J. L. Browning purchases same.

"W. D. Browning,
J. L. Browning."

W. D. Browning sold and agreed to convey the farm in question to one Reiss, and approached his brother who was in possession of the farm and asked him to surrender possession, which he agreed to do but failed, and later W. D. Browning gave to J. L. Browning a written notice to vacate within thirty days, but J. L. Browning refused to give possession and instituted the above styled action in equity against his brother W. D. Browning for a reformation of the rental contract above quoted, claiming that he, J. L. Browning, was the beneficial owner of the land through an arrangement with W. D. Browning, whereby the said W. D. Browning was to and did purchase the lands from Mrs. Beckley for the use and benefit of J. L. Browning and was to hold the same in trust for him and that said J. L. Browning was to have the farm in any event at the end of five years and the rents of $150 per year were to be applied to the purchase price of the farm. An injunction was prayed against W. D. Browning restraining him from selling or conveying the property. The petition prayed that the contract be reformed so as to express the true intention of the parties as set forth in that pleading and that the plaintiff's right to purchase said farm at the expiration of five years from May 14, 1916, for the sum of $2,000.00, less such sums as were paid as rent by the plaintiff, be preserved. W. D. Browning answered denying that J. L. Browning was the beneficial owner, or any owner at all of the farm or any interest therein, and affirmatively alleged that the written contract in question exactly expressed the agreement of the parties and that there were no provisions of the contract omitted from the writing.

The writing was prepared by one J. L. Orr, a brother-in-law of the two Brownings. According to his evidence, and it is practically uncontradicted upon this point, he was notified to prepare the writing and did so in the presence and at the suggestion and according to the direction of the two Brownings. While testifying he was asked:

"The agreement in this paper as follows, 'said party of the first part reserves the right to sell said farm at

any time he desires and in case said farm is sold J. L. Browning is to give peaceable possession in thirty days.' Was that agreed upon between J. L. Browning and W. D. Browning at the time? A. That was the agreement between the two because that is the way we talked the matter over, as they talked the matter over and came to a conclusion about the agreement, I wrote it down and then I read it over to J. L. Browning. I would write a while and then I would read, then I would write down what the understanding was about a certain thing and I would read it, we were all sitting there together. Q. Did you explain it to him? A. I didn't think it was necessary because I would write what they wanted, I would write and then I would read it to them—I would write and then I would begin to read at the first, so that there would be no misunderstanding about it and read down to where I wrote and then I would say, 'what is next.' Q. Did you read it over several times? A. Yes, more than once. Q. Was there any doubt on May 4, 1916, at the time that you drew this paper up, about W. D. Browning reserving the right to sell this farm at any time that he desired, and in case said farm was sold that J. L. Browning would give peaceable possession within thirty days, that is, did J. L. Browning understand that W. D. Browning had the right at any time that he saw fit to sell that property to anybody else that he might want to? A. Well, that was the agreement and there was no doubt of it in my mind about that because that was what they told me to write down. Of course, it is entirely clear in my mind and I do not see where there could be any doubt about it, if there had been any doubt about it, if they had not agreed to it, I would not have set it down, I would not have put it in the lease. . . . Q. Was there any agreement or understanding between W. D. or Dick as you call him and J. L. Browning in your presence or by you, that W. D. Browning did not have the right to sell that property at any time that he wanted to, to anybody else but that he had to hold it for five years? A. No, sir; that was not my understanding. Q. Mr. Orr, was there any statement made at the time that that paper was drawn up that W. D. Browning only had the right to sell this property to others in the event that J. L. Browning failed to pay his rent? A. There was no statement to that effect in my hearing, because I read the whole paper over when I got through with it and before they signed it. I don't know what they had agreed on before that state-

ment or that paper was written; but I know what the agreement was when I was there, I read it over and it was agreeable to both parties. We sat there and talked the thing over like anybody else would do, about this deal, and I would write it down and read to where I had written and then I would say 'what else' and I would write that down, and after the whole thing was written down I read it over and we all signed it—that is the facts in the case."

The writing quoted above appears quite clear and unambiguous, and we are of opinion that the chancellor gave it its proper construction. By the writing W. D. Browning leased his farm to his brother J. L. Browning for twelve months, with the privilege "of four more years provided that J. L. Browning makes his payments and everything is agreeable to both parties." The writing then provides that W. D. Browning is to have the "right to sell said farm at any time he desires and in case said farm is sold J. L. Browning is to give peaceable possession in thirty days." The contract further provides that in case of a sale of the farm by W. D. Browning he is to "pay a reasonable amount for any crops that said party of the second part (J. L. Browning) may have growing in case said farm is sold." This is followed by a provision in the writing which says: "J. L. Browning is to have the privilege of buying said farm at the expiration of five years at the same price W. D. Browning paid for same; it is further agreed that all money paid as rent is to go towards the purchase price on said farm provided J. L. Browning purchases the same." It is argued by appellant that the last clause quoted is repugnant to the other clause also quoted which reserves the right to W. D. Browning to "sell said farm at any time he desires." While there is a seeming conflict in these provisions, when the whole contract is read together it vanishes, and the writing is clear and complete. W. D. Browning reserved the right to sell the farm at any time and in case of a sale J. L. Browning was to surrender possession within thirty days and was to be paid a reasonable price for any growing crops then on the farm, but in case W. D. Browning did not sell the place during the lease term then J. L. Browning was to have the privilege at the end of the five years' term of buying the farm at the price of $2,000.00, said sum to be credited with all moneys paid by J. L. Browning as rental. Thus read and construed the entire contract harmonizes. From the evi-

dence we are fully convinced that the writing contains the whole agreement between the two brothers, and that appellant is not entitled to a reformation thereof. This being true it follows as a necessary consequence that appellant was not entitled to the injunction staying W. D. Browning from a sale and transfer of the property.

The common law action styled above was one upon a writ of forcible detainer sued out by W. D. Browning against J. L. Browning to oust the latter from the possession of the farm. It is complained by appellant J. L. Browning on this appeal that the trial court erred to his prejudice in failing to allow him to introduce evidence before the jury on the trial of the writ of forcible detainer to show that the rental contract did not contain all of the agreement between the two brothers with respect to the leasing of the farm, and also of the alleged error of the court in peremptorily instructing the jury to return a verdict finding J. L. Browning guilty of forcible detainer.

As the lease contract clearly provided for a surrender of possession of the premises upon thirty days' notice, and it being made to appear that J. L. Browning had received written notice more than thirty days before the commencement of the proceeding and had failed to vacate, there was no instruction the court could have given other then one specifically directing the jury to find the appellant guilty of the detainer, for the contract had not been reformed and there was no ground for reformation. From a consideration of the whole record in both these appeals, we are of opinion that no error has been committed to the prejudice of the substantial rights of appellant J. L. Browning.

The judgment in each case is affirmed.